UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| TICKED OFF, INC.<br><br>            Plaintiff,<br>     v.<br><br>SMARTHEALTH, INC., d/b/a<br>SMARTPRACTICE.COM<br><br>            Defendant | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Ticked Off, Inc. alleges as follows:

### Nature of the Case

1.  Ticked Off seeks injunctive relief and damages for acts of trade dress infringement, copyright infringement, unfair competition and deceptive trade practices by the defendant in violation of the laws of the United States and the State of New Hampshire.

### The Parties

2.  Plaintiff, Ticked Off, Inc. ("TOI"), is a corporation organized and existing under the laws of the State of New Hampshire, with its main corporate offices located at 99 Spruce Lane, Dover, NH 03820. TOI has, since 1994, designed, manufactured, and marketed a tick removal device known as the "Ticked Off"™.

3.  Defendant, SmartHealth, Inc., is a corporation organized and existing under the laws of the State of Arizona, with its main corporate offices located at 3400 E. McDowell Road, Phoenix, AZ 85008-3884. SmartHealth does business under the tradename "SmartPractice" at www.smartpractice.com, selling, among other

categories of products, veterinarian supplies, including tick removers.

## Jurisdiction and Venue

4. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 15 U.S.C. §1121 (actions arising under the Lanham Act), 15 U.S.C. §1125(a) (trade dress infringement and unfair competition under the Lanham Act), 28 U.S.C. §1331 (actions arising under the laws of the United States), 28 U.S.C. §1332(a) (diversity of citizenship between the parties), and 28 U.S.C. §1338(a) (actions arising under an Act of Congress relating to trademarks or copyrights). This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. §1367(a).

5. This Court has personal jurisdiction over the defendant because TOI suffers damage to its intellectual property rights here in New Hampshire.

6. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §1391(b) because TOI is located and does business here, and damages from defendant's trade dress and copyright infringement are suffered by TOI in the State of New Hampshire.

## Background Facts

### Ticked Off Trade Dress

7. TOI designed the Ticked Off device in 1994 and has produced it continuously since that time.

8. The overall configuration and external appearance of the Ticked Off is unique and distinctive from tick removal devices produced by other manufacturers.

9. The distinctive appearance of the Ticked Off is instantly recognizable by those familiar with tick removal devices.

10. The Ticked Off has the following features (this list is non-exhaustive):

    a. It is 3.5 inches in overall length;

b. It is made from white injection molded plastic;

c. It features a round, circular cup at one end that is .904 inches in diameter (to its external surfaces);

d. The circular cup is a pure hemisphere;

e. The hemispheric cup features a v-shaped groove directly opposite where it joins the handle that measures .970 inches;

f. It features a straight, flat handle that is 5/8" wide, parallel, and rounded on the end opposite the hemispheric cup;

g. A hole approximately 3/8" in diameter is centered at the rounded end of the handle, 1/8" equidistant from the edges;

h. On the top of the handle, there is a rectangular area of smoother plastic that extends from 1/16" from the edge of the hemispheric cup to the same distance from the hole at the end of the handle. This rectangular area is separated from the long edges of the handle by 1/8" of an inch. On products that TOI sells directly to the public, the words "TICKED OFF" appear in raised letters within the smooth rectangular area. On products intended for resale and/or promotional use, the smooth rectangular area is blank, available for private labeling.

i. On the underside, there are triangular flanges at each edge that extend between the handle and the underside of the hemispheric cup;

j. On the underside of the handle is a (copyrighted) diagram in raised relief that demonstrates how to use the Ticked Off to remove a tick

k. The branding for the Ticked Off is located on the underside of the handle, beside the diagram.

11. Images of the Ticked Off plainly evidence these characteristics:







12. The trade dress of the Ticked Off is an arbitrary combination of elements which forms a nonfunctional design.

13. TOI's trade dress is the result of specific design choices made during the development of the device to achieve the final appearance and is not dictated by utilitarian purposes.

14. It is not necessary to make a tick removal device that looks like the Ticked Off to perform the same functions or to be successful in the marketplace.

15. Tick removal devices from other providers each have their own trade dress and none would be confused with the Ticked Off or with one another:







16. Tick removal devices from these other manufacturers all successfully perform the same functions as the Ticked Off, as evidenced by the fact that they are widely sold and all meet the requirements of a tick removal device.

17. The Ticked Off was subject to a patent, number 5,595,569, dated January 21, 1997 (the '569 Patent). The '569 Patent described a spoon-shaped tick remover, but allowed for significant differences in size, shape, and configuration, including a range in overall length between 3 to 5 inches, a cup between .4 to 1 inch in diameter, and cup shape that was oblong or oval instead of hemispherical. It is not necessary to make a tick removal device that looks like the Ticked Off to perform the same functions as described in the '569 Patent.

18. The trade dress of the Ticked Off has acquired a substantial level of source identifying capability, *i.e.* secondary meaning.

19. This secondary meaning is the result of, among other things, the widespread popularity and use of the Ticked Off throughout the United States, Canada, and worldwide.

20. This secondary meaning is also the by-product of TOI's extensive marketing and promotional efforts, along with third-party publicity.

21. The Ticked Off is promoted and/or sold by independent third parties (*e.g.* Walmart, Amazon, Healthy Pets, USDA, CDC, Catholic Medical Center, etc.).

22. TOI has promoted the sale of the Ticked Off through extensive advertising in various media (radio, television, and print) as well as appearances at trade shows and other events.

23. The Ticked Off has been generally recognized as a leading tick removal device.

24. TOI has developed valuable goodwill in the trade dress of the Ticked Off and the relevant public has come to know, recognize, and identify the distinctive look and appearance of a tick removal device as originating from TOI.

6

25.     TOI has not licensed or granted to the defendant the authority, permission, or any other right to make, manufacture, use, offer for sale or sell a tick remover that copies or otherwise utilizes the trade dress of the Ticked Off or that resembles the Ticked Off.

TOI's Copyright

26.     On the reverse of every Ticked Off device is a line drawing that demonstrates how the device should be used:



27.     The depiction on the device is based on a line art file:



28.     The copyright to that image, and its original line drawing, is held by TOI and bears Registration Number VA 2-088-078 with the United States Copyright Office.

**SmartHealth's Infringing Activities**

29. Beginning in 1995, SmartHealth purchased Ticked Off products from TOI for resale through its website and its print catalog.

30. The parties agreed that TOI would make blank-handled Ticked Off products – suitable for private labeling – available exclusively to SmartHealth.

31. TOI maintained a link on its own website to the Ticked Off product page on SmartHealth's SmartPractice website for customers who wanted to personalize the Ticked Off product with their name or logo in the smooth rectangular area on the top of the handle.

32. TOI's sales to SmartHealth were predominantly of blank handled units, totaling 50,000 such units in 2016, 50,000 units in 2015, 100,000 units in 2014, 50,000 units in 2013, 125,000 units in 2012, 35,600 units in 2011, 35,000 units in 2010, 56,000 units in 2009, 40,000 units in 2008, 25,000 units in 2007, 20,000 units in 2006 20,000 units in 2005, 15,000 units in 2004, 21,000 units in 2003, 22,800 units in 2002, 25,200 units in 2001, 32,700 units in 1999, 25,000 units in 1997, 25,000 units in 1996 and 25,000 units in 1995.

33. TOI also sold a smaller amount of packaged Ticked Off products to SmartHealth that featured the full "Ticked Off" name imprinted on the handle. Between 1998 and 2016, these branded sales totaled 9,072 units.

34. In June 2016, SmartHealth placed an order with TOI and then, within hours, cancelled the order. When TOI reached out to SmartHealth to inquire, SmartHealth claimed that they already had enough stock on hand.

35. During the summer of 2016, a potential customer interested in having the Ticked Off product imprinted with their logo contacted TOI for help. When TOI directed the customer to the SmartHealth link on TOI's website, it was discovered that the link no longer functioned.

36. When TOI contacted SmartHealth to report the error, SmartHealth stated that they'd decided to have tick removers made for them in China.

37. SmartHealth did, in fact, produce a tick remover sourced from China, which it markets under the name "Tickety-Split."

38. The product can be found at this url: https://www.smartpractice.com/shop/wa/style?id=SP24660&m=SPV

39. SmartHealth's Tickety-Split product replicates and copies the trade dress of the Ticked Off exactly and in all respects, as comparison photographs reveal (in each photograph, the Ticked Off is on top and the Tickety-Split is on the bottom):







40. The Tickety-Split also copies TOI's copyrighted diagram showing the device in use:



41. SmartHealth also uses an exact copy of TOI's copyrighted diagram on its website:



42. On information and belief, SmartHealth intended to produce an exact copy of the Ticked Off.

43. On information and belief, SmartHealth intended to copy TOI's copyrighted diagram.

44. On information and belief, SmartHealth took both actions in an effort to avoid paying TOI for genuine Ticked Off products, and to capture and trade on TOI's good will with the public, and with the medical and veterinary communities.

**COUNT I**
**Trade Dress Infringement (15 U.S.C. § 1125(a))**

45. TOI re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 44 of this Complaint.

46. The trade dress of the Ticked Off is used in commerce, non-functional, and has acquired secondary meaning in the marketplace.

47. By manufacturing, marketing, and selling the Tickety-Split, SmartHealth has misappropriated TOI's trade dress in the Ticked Off. SmartHealth's unlawful and unauthorized uses of TOI's trade dress are intentionally calculated to cause consumers to mistake, or be confused about, the source of origin of the Tickety-Split. All of these activities constitute violations of Section 43(a) of the

Lanham Act, 15 U.S.C. §1125(a).

48. SmartHealth's unauthorized use of TOI's trade dress is willful and intentional.

49. If not enjoined by this Court, SmartHealth will continue its acts of unfair competition in the unauthorized use of the TOI trade dress, which acts have caused, and will continue to cause, TOI immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 TOI is entitled to an Order from this Court enjoining unlawful activities.

50. As a result of SmartHealth's acts of unfair competition, TOI has been, and continues to be, irreparably harmed. Pursuant to 15 U.S.C. §§ 1117 and 1118, TOI is entitled to a judgment for: (1) SmartHealth's profits; (2) damages sustained by TOI; (3) treble damages; (4) TOI's attorneys' fees; (5) TOI's costs of this action; (6) interest; and (7) an Order that SmartHealth turn over to TOI for destruction all Tickety-Split products and all means of marketing, selling or making the Tickety-Split.

## COUNT II
### Copyright Infringement (17 U.S.C. §501 et seq.)

51. TOI re-alleges and incorporates herein by reference the allegations in Paragraphs 1 through 50 of this Complaint.

52. TOI owns a registered copyright in the diagram appearing on the reverse of the Ticked Off as well as its accompanying line drawing (the "Work").

53. SmartHealth has infringed, and continues to infringe on TOI's copyright by including a copy of the Work on the Tickety-Split and on the page of its website used to market that device.

54. As a result of SmartHealth's infringement, TOI has been injured and continues to suffer injury.

55. As a remedy for SmartHealth's infringement, TOI is entitled to a) a

permanent injunction against further use of the Work (17 U.S.C. §502); b) impoundment and shipment to TOI for destruction of all Tickety-Split products as well as any molds used to manufacture them (17 U.S.C. §503); c) its damages resulting from the infringement (17 U.S.C. § 504(b); d) SmartHealth's profits attributable to the infringement; e) its costs in this action (17 U.S.C. §505; and f) its reasonable attorneys' fees (17 U.S.C. §505).

## COUNT III
### Consumer Protection Act (RSA 358-A, et seq.)

56. TOI re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 55 of this Complaint.

57. SmartHealth is engaged in trade or commerce as that term is defined in RSA 358-A:1, II. SmartHealth has engaged in conduct that creates confusion and misunderstanding among the purchasing public. These acts constitute an unfair and deceptive act or practice in the conduct of trade or commerce within New Hampshire under the Consumer Protection Act pursuant to RSA 358-A:2.

58. TOI seeks its actual damages as a result of SmartHealth's violation of RSA 358-A, *et seq.*, costs of the suit, and reasonable attorneys' fees. Furthermore, since SmartHealth's conduct amounts to a "willful and knowing" violation of the Consumer Protection Act under RSA 358-A:10, TOI is also entitled to double or treble damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. That SmartHealth, its corporate officers, agents, servants, employees, assigns and attorneys, and those persons in active concert with SmartHealth, be preliminarily and permanently enjoined and restrained from using the TOI trade dress in connection with the advertising, promotion, offering for sale or sale of any

Tickety-Split or other product that is associated with TOI;

      B.    That SmartHealth, its corporate officers, agents, servants, employees, assigns and attorneys, and those persons in active concert with SmartHealth, be preliminarily and permanently enjoined and restrained from using the Work for any purpose;

      C.    That SmartHealth be ordered to turn over to TOI for destruction all Tickety-Split devices, signs, prints, print material, advertisements, and other representations and means for reproducing the Tickety-Split, in their possession, custody or control bearing the TOI trade dress, or any colorable imitation thereof, and to destroy, or remove all other uses or designations that are confusingly similar to TOI's trade dress;

      D.    That SmartHealth be directed to file with the Court and serve on TOI, no later than thirty (30) days after issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction;

      E.    That an accounting be conducted and judgment be rendered against SmartHealth for all profits it received, directly or indirectly, from its sales and/or advertising of any product(s) bearing TOI's trade dress, any trade dress confusingly similar to TOI's, or the Work; all damages sustained by TOI because of SmartHealth's trade dress infringement, unfair competition, copyright infringement, and SmartHealth's deceptive trade practices and unfair competition as cognizable under New Hampshire law;

      G.    That the actual damages assessed against SmartHealth be enhanced as provided by 15 U.S.C. § 1117, as well as double or treble damages as permitted under New Hampshire law;

      H.    That SmartHealth be required to pay to TOI monetary damages to be used for corrective advertising to be conducted by TOI;

I.   That TOI be entitled to recover its costs associated with this lawsuit including, but not limited to, reasonable attorneys' fees and expenses; and

J.   For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**TICKED OFF, INC.**

By its Attorneys,

Dated:  February 21, 2018            By:   /s/ Jeffrey C. Spear
                                            Jeffrey C. Spear N.H. Bar #14938
                                            Orr & Reno, PA
                                            45 S. Main Street, P.O. Box 3550
                                            Concord, New Hampshire, 03302
                                            (603) 224-2381
                                            jspear@orr-reno.com